# EXHIBIT A-1

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

———————————————————————
:
JOHN FRISBIE, Individually and on Behalf : 
of All Other Persons Similarly Situated,   :      Case No. 6:17-cv-06270
:
      Plaintiffs,   :
:
      v.   :
:
TOP LINE RESTAURANT, INC., TOP   :
LINE MANAGEMENT, LLC, FEAST   :
FOODS, LLC, FEAST AMERICAN   :
DINERS, LLC, and REVEILLE   :
MANAGEMENT, LLC,   :
:
      Defendants.   :
———————————————————————:

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR CONDITIONAL CERTIFICATION

Seth R. Lesser
Fran L. Rudich
Christopher M. Timmel
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

Nicholas A. Migliaccio
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H St NE, Suite 302
Washington D.C. 20002
Telephone: (202) 470-3520

Jack Landskroner
Drew Legando
LANDSKRONER GREICO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, OH Suite 200
Telephone: (216) 522-9000

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

I.    PROCEDURAL HISTORY AND PERTINENT FACTS ................................. 1

    A.    The Nature of Plaintiffs' Legal Claims................................................. 1

    B.    Statement of Facts ................................................................................ 2

    C.    The First-Stage Deposition Testimony and the Documentary Evidence
        Demonstrate that Assistant Restaurant Managers are Similarly Situated ............. 3

        1.    The Duties and Responsibilities Are The Same for All RMs .................... 3

        2.    Top Line Creates a Uniform Set of Training Materials for RMs .............. 6

        3.    Top Line Restaurants Operate Pursuant to the Same Corporately Derived
            Policies ......................................................................................... 7

        4.    The Compensation Method and Classification is the Same for All RMs ... 8

II.   ARGUMENT ..................................................................................................... 8

    A.    Conditional Certification Under the FLSA ............................................ 8

    B.    Plaintiffs' Burden is Minimal at the Notice Stage ................................ 10

    C.    Plaintiffs' FLSA Claims Should be Conditionally Certified ................................ 15

    D.    The Court Should Approve Plaintiffs' Proposed Notice and Notice Process ....... 20

        1.    Plaintiffs' Proposed Notice is Timely, Accurate, and Informative .......... 20

        2.    The Notice Should Be Sent to All RMs Who Worked Within Three Years
            of the Filing of the Complaint ................................................................ 20

        3.    The Court Should Order Top Line to Produce Contact Information for the
            Collective ........................................................................................ 21

CONCLUSION ........................................................................................................ 23

i

# TABLE OF AUTHORITIES

**Case**                                                                                          **Page**

*Alli v. Boston Market*, 2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) ........................ 17

*Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484  (S.D.N.Y. 2009) ........................ 17

*Aros v. United Rentals, Inc.*, 269 F.R.D. 176 (D. Conn. 2010) ...................................................... 17

*Ayers v. SGS Control Servs., Inc.,* 2004 U.S. Dist. LEXIS 25646 (S.D.N.Y. 2004). .................... 13

*Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2d Cir. 1978) ................. 9

*Chowdhury v. Duane Reade, Inc.,* 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007) ........ 13

*Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) ...................... 16

*Creely v. HCR Manorcare*, 2011 U.S. Dist. LEXIS 61376 (N.D. Ohio June 9, 2011) ............... 17

*Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638 (S.D.N.Y. 2010) ............................ 11

*Damassia v. Duane Reade, Inc.*,
    2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006). ...................................... 12, 13, 16

*Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152 (S.D.N.Y. 2008) ......................................... 7, 18

*Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317 (S.D.N.Y. 2007) ............................ 12

*Ferreira v. Modell's Sporting Goods, Inc.,*
    2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012) ........................................ 15, 19

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003) ............ 13, 15

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d. Cir. 2015) ........................................... 1

*Goodman v. Burlington Coat Factory*,
    2012 U.S. Dist. LEXIS 166910 (D.N.J. Nov. 20, 2012) .................................................. 16

*Gortat v. Capala Brothers, Inc.*,
    2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010) ...................................... 10, 11, 14

*Griffiths v. Fordham Financial Management*,
    2013 U.S. Dist. LEXIS 72909 (S.D.N.Y. May 22, 2013) ................................................. 17

*Guttentag v. Ruby Tuesday Inc.*,
   2013 U.S. Dist. LEXIS 82350 (S.D.N.Y. June 11, 2013) .......................................... 11, 13

*Hallissey v. America Online, Inc.,* 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008)...... 14

*Hens v. Clientlogic Operating Corp.,*
   2006 U.S. Dist. LEXIS 69021 (W.D.N.Y. Sept. 22, 2006) .................................. 10, 12, 13

*Hinterberger v. Catholic Health System*,
   2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. Oct. 20, 2009) ....................................... *passim*

*Hoffman v. Sbarro, Inc*., 982 F. Supp. 249 (S.D.N.Y. 1997).................................................. 12, 13

*Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989).......................................................... 9, 10, 20

*Ibea v. Rite Aid Corp*., 2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec. 14, 2011) ..................... 11

*In re Penthouse Executive Club Comp. Litig.*,
   2010 U.S. Dist. LEXIS 114743 (S.D.N.Y. Oct. 27, 2010) ............................................... 17

*Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010)...... 13, 16, 19

*Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 27, 2012) ......... 13, 17

*Lora v. To-Rise, LLC,* 2017 U.S. Dist. LEXIS 112644 (W.D.N.Y. July 18, 2017) .................... 11

*Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) .................... 15

*Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233 (11th Cir. 2008)................................ 10, 12

*Myers v. The Hertz Corp*., 624 F.3d 537 (2d Cir. 2010)....................................................... *passim*

*Parks v. Dick's Sporting Goods, Inc.*,
   2007 U.S. Dist. LEXIS 2094912 (W.D.N.Y. Mar. 21, 2007)............................... 14, 15, 16

*Prizmic v. Armour, Inc.,* 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006)..................... 13

*Raimundi v. Astellas US LLC*, 2011 U.S. Dist. LEXIS 124484 (S.D.N.Y. Oct. 27, 2011) .......... 18

*Raniere v. Citigroup, Inc.*, 2011 U.S. Dist. LEXIS 13539 (S.D.N.Y. Nov. 22, 2011 ................... 8

*Ravenell v. Avis Budget Car Rental , LLC,*
   2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010).......................................... 11, 19

*Rubery v. Buth-Na-Bodhaige, Inc.,* 569 F. Supp. 2d 334 (W.D.N.Y. 2008) .............. 11, 13, 14, 18

*Scholtisek v. The Eldre Corporation*, 229 F.R.D. 381 (W.D.N.Y. 2005)............................... *passim*

*Schucker v. Flowers Foods, Inc.*, 2017 U.S. Dist. LEXIS 136178 (S.D.N.Y. 2017) ……………12

*Sexton v. Franklin First Fin., Ltd.,* 2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009)….14

*Tarrant v. Sutherland Global Servs.*,
    2015 U.S. Dist. LEXIS 110356 (W.D.N.Y. Aug. 20, 2015) ........................................... 12

*Thornton v. Cty. of Albany*, No. 9:14-CV-679,
    2016 U.S. Dist. LEXIS 137287 (N.D.N.Y. Oct. 4, 2016) ................................................ 12

*Winfield v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 16449 (S.D.N.Y. Jan. 27, 2012) ................. 17

*Youngblood v. Family Dollar Stores, Inc.*,
    2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4, 2011) .................................................. 7

*Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213 (D. Conn. 2012)............................................ 16, 19

*Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658 (S.D.N.Y. 2009)......................................... 11

## Statutes and Rules

29 U.S.C. § 216(b) ............................................................................................................. *passim*

29 U.S.C. § 256(b) ...................................................................................................................... 9

Fed. R. Civ. P. 23........................................................................................................... 1, 7, 9

Fed. R. Civ. P. 30(b)(6).................................................................................................... 2, 6, 16

## Other Authorities

Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807
    (3d ed. 2005) .................................................................................................................... 9

Plaintiff John Frisbie and Opt-In Plaintiff Rebecca Russell (collectively "Plaintiffs"),

submit this memorandum in support of their Motion for Conditional Certification and Notice

pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on

behalf of all Restaurant Managers ("RMs") employed by Defendant Top Line Restaurants, Inc.

and Top Line Management, LLC (collectively "Top Line"), at any time from April 28, 2014 to

the present (the "Collective Action Period"), anywhere in the United States, and who were

classified as exempt employees.  This Court should grant the motion for this archetypical FLSA

collective action so that additional current and former RMs can be notified of their right to

participate in this lawsuit.  Such an Order would be in line with the overwhelming precedent in

this Court and this Circuit granting conditional certification motions, including in restaurant and

retail misclassification cases, after a plaintiff has made a "modest factual showing" to meet the

"lenient burden." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d. Cir. 2015)

(citing *Myers v. The Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) ("*Hertz*")).

## I.   PROCEDURAL HISTORY AND PERTINENT FACTS

### A.   The Nature of Plaintiffs' Legal Claims

On April 28, 2017, Plaintiff John Frisbie filed a Complaint against Top Line in the

Western District of New York, alleging violations of the FLSA and the New York Labor Law on

behalf of himself and similarly situated employees pursuant to 29 U.S.C. § 216(b) and Fed. R.

Civ. P. 23.  *See* Complaint (ECF Doc. 1).[1]  Top Line answered the complaint on June 30, 2017.

*See* Answer (ECF Doc. 13).  Afterwards, Rebecca Russell filed her consent to opt into this

litigation pursuant to 29 U.S.C. § 216(b) (ECF Doc. 22).  On September 13, 2017, Judge

---

[1] The Complaint also identifies as co-defendants in this action Feast Foods, LLC and Feast American Diners, LLC ("Feast."). Feast purchased several Denny's franchises from Top Line during the Collective Action Period, including the restaurants that employed Plaintiffs. Mediation with Feast is ongoing, whereas mediation attempts with Top Line concluded on July 25, 2018 (see ECF Doc. 46).

Feldman signed a Discovery Order bifurcating discovery in this action (ECF Doc. 29). The First-stage discovery was limited solely to the question of whether RMs are "similarly-situated" under the FLSA, and included depositions of the Plaintiffs, depositions pursuant to Fed. R. Civ. P. 30(b)(6) of Defendants' corporate representatives, and limited written discovery and document production; the second stage, if required, would then focus on the merits of Plaintiffs' claims. First-stage discovery is now complete.[2]

### B.      Statement of Facts

Top Line is an Arizona-based corporation and long-time franchise operator of Denny's restaurants, having at one-time operated as many as 35 Denny's locations simultaneously.[3]   Top Line presently operates 14 Denny's restaurants, all located in the Buffalo region of New York. The executives at Top Line corporate headquarters direct the administrative and business functions of the entire company, including, as specifically relevant to this motion, the classification of employees at Top Line.[4]

Plaintiff Frisbie is a resident of New York, who worked at the Denny's restaurant located in Horseheads, New York from 2003 to present. Opt-In Plaintiff Russell worked at the Denny's restaurant located in Horseheads and another in Painted Post, New York. Plaintiffs were both employed by Top Line as RMs and classified as exempt.  Plaintiffs allege that Top Line violated the FLSA by willfully failing to pay them and other similarly situated RMs overtime pay for all hours worked in excess of 40 hours in a workweek.  *See* Complaint (ECF Doc. 1) at ¶¶ 1-2, 6-12.

---

[2] Exhibits cited in this memorandum are attached to the Affidavit of Seth R. Lesser, filed contemporaneously.

[3] *See, e.g.,* "Denny's Multi-Unit Operator on the Top Line," Helen Bond, May 18, 2017, available at
https://www.franchising.com/sponsored/dennys_multiunit_operator_on_the_top_line_.html (last accessed July 17, 2018).

[4] Exhibit 1, 30(b)(6) Deposition of Alain Snyder at 49:16-20.

Top Line asserted 13 affirmative defenses but failed to specifically assert the executive or administrative exemptions as defenses, stating generally that "[t]he claims are barred" because Plaintiff and putative collective action members are "exempt from coverage." *See* Answer (ECF Doc. 13) at Tenth Affirmative Defense.

###### C.   The First-Stage Deposition Testimony and the Documentary Evidence Demonstrate that Assistant Restaurant Managers are Similarly Situated

###### 1.   The Duties and Responsibilities Are The Same for All RMs

Top Line's corporate representative, Mr. Alain Snyder, testified that a single RM position description was the sole job description for RMs in the company. (*See* Snyder Ex. 1 at 41:7-9; 65:13-23). He confirmed that the company had the same expectations for all RMs everywhere "in terms of what RMs should do on a daily, weekly, monthly, and annual basis." (Snyder Ex. 1 at 65:19-23).  He further testified that all RMs were subject to the same physical requirements (Snyder Ex. 1 at 81:10-20), as well as the same shift expectations (Snyder Ex. 1 at 82:10-17; 120:12-22). Additionally, Mr. Snyder confirmed that there was no change in job description or expectation for any RM regardless of any difference in:

- The restaurant in which they worked;

- The restaurant's staffing level;

- The restaurant's location; or

- The restaurant's sales volume.

(Snyder Ex. 1 at 66:13-23).  Indeed, his testimony was so clear and complete that it alone supports Section 216(b) certification here:

Q:   All RMs in Top Line are classified as exempt and have been as long as your tenure?

A:   Correct.

Q:    And they are paid on a salary basis, and we looked at how the salary starts and how it moves; correct?

A:    That's correct.

Q:    And it's uniform for all of those employees?

A:    That's right.

Q:    Does Top Line consider when determining whether an RM should be exempt the size of the restaurant in which the RM is to work, or does Top Line just say, look, if you're an RM, you are exempt?

A:    **We would say if you're an RM, you are exempt because the job won't change based on volume. The responsibilities, duties, the job doesn't change.**

Q:    So regardless of the size, the sales volume, the number of hours a particular RM works, the hours of operation of the store, the length of tenure the RM has had with the company, any different in geography or their work experience they bring to the job or who their GM is or the market competition they face, it's always going to be the same expectation, the same job duties?

A:    Sure.

(Snyder Ex. 1 at 122:9-25-123:1-6, emphasis added).

As well, Top Line disseminates the same uniform instructions, supervision, evaluation tools, and training, to all of its RMs (Snyder Ex. 1 at 49:16-20). Additionally, while classifying all RMs as exempt without considering any individual factors, Top Line did not conduct studies or formal audits to evaluate whether the Company's unvarying exemption classification is supported by the actual duties performed by RMs. (Snyder Ex. 1 at 36:18—37:3).

The deposition testimony of Plaintiffs Frisbie and Russell confirm the similarities of RMs duties. For instance, they testified that the RMs throughout different branches of Denny's performed similar tasks. (Frisbie Ex. 3 at 368: 4-7). Plaintiffs visited and worked at several Denny's restaurants in New York, where they observed and spoke with other RMs. (Frisbie Ex. 3 at 367:10-23, 374:24—375:5; Russell Ex. 4 at 235:9-14). In their depositions, Plaintiffs

confirmed that RMs in other restaurants shared the same duties as Plaintiffs and similarly, the

vast majority of their time was spent doing "code work." (Frisbie Ex. 3 at 368:4-7; Russell Ex. 4

at 235:15—236:4).

Although this is ultimately a merits point beyond the scope of the present motion, it is not

insignificant that the testimony of the RM deponents confirms that they spent the majority of

their time doing the work of hourly employees.[5]  In their depositions, Plaintiffs testified that 90

percent of their job duties were "job coding," which entailed nonsupervisory tasks including

cleaning, cashiering, seating customers, and cooking.  *See* Frisbie Ex. 3 at 365:4-24 and 366:2-

12; Russell Ex. 4 at 234:1-14, 24 and 235:1-8). Essentially, Plaintiffs were asked to do the same

work that was being done by the hourly employees. *Id.* Duties such as answering emails, hiring,

and submitting financial reports were reserved for the General Managers ("GMs"). (Frisbie Ex. 3

at 41:19-24, 42:1-18); (Russell Ex. 4 at 101: 12-20, 104:13-15). Additionally, RMs were not

involved in administrative processes such as setting dress codes, closing the restaurant in the

---

[5] Even Defendants job description includes plainly non-exempt requirements and duties, such as:

- "Must be able to lift a tray weighing up to 25 lbs";
- "Must be able to lift and carry supplies and equipment weighing up to 60 lbs and place items on high and low shelves in office, store rooms, service areas, walk-in coolers, and freezers"
- "Must be able to bend, stoop, reach, lift, and grasp";
- "Must be able to hear well in a loud environment to respond to employee and guest needs"
- "Must meet any state, county, or municipal regulation pertaining to health risk concerns about food handling"
- "Must be able to work with all Denny's menu products"
- "Must be able to work around potentially hazardous chemicals"
- "Must work inside and outside"
- Must be able to stand and walk during an 8 to 10 hour shift; occasional shifts in excess of 10 hours may be required due to the demands of the business": and
- "Must be able to tolerate extreme temperature changes in kitchen and freezer areas*."*

*See* Ex. 2 (RM Job Description).

event of bad weather, disciplining employees, providing input into Denny's corporate policies, or entering into contracts on behalf of Denny's. (Frisbie Ex. 3 at 371:10-13, 372:13-23); (Russell Ex. 4 at 238:1-7).

Further, Plaintiffs testified that they never trained any employees and the GMs had ultimate authority over matters of any significance in the restaurant. (Frisbie Ex. 3 at 48:24, 49:1). Plaintiffs' recommendations for hiring or firing employees were given little or no weight and the GMs had sole discretion over these processes. (Frisbie Ex. 3 at 370:17-24, 371:13). RMs were also not authorized to give bonuses, increase pay for employees, or have input into broader strategic decisions for the company. (Russell Ex. 4 at 238:18-24, 239: 1-2). Plaintiff Russell testified that though RMs were to work 40 hours a week, they were either told or expected to work at least 50 hours a week, without being paid overtime compensation. (Russell Ex. 4 at 236:15-22). Plaintiff Frisbie also frequently worked 60 to 70 hours per week. (Frisbie Ex. 3 at 369:15-23).

## 2.  Top Line Creates a Uniform Set of Training Materials for RMs

Top Line's 30(b)(6) representative testified that Top Line's corporate headquarters generates one set of management training materials for all RMs companywide. Mr. Snyder confirmed that all RMs go through the same training program as exempt Managers-in-Training (MITs) (Snyder Ex. 1 at 92:18-24; Russell Ex. 4 at 94:5-14), using the same training materials, and receiving access to the same e-learning resources (Snyder Ex. 1 at 75:6-7; Frisbie Ex. 3 at 134:6-18; 137:5-11).  He testified that the purpose of uniform training is "so everyone gets the same education" (Snyder Ex. 1 at 93:15-20). Moreover, all RMs are subject to the same guiding principles (Snyder Ex. 1 at 77:2-6; 84:16-19), mandatory brand standards (Snyder Ex. 1 at 78:5—79:3; 97:15-19; Frisbie Ex. 3 at 107:14—108:4; Russell Ex. 4 at 22:2-13), including

6

grooming and uniform policies (Snyder Ex. 1 at 129:23—131:3).  And the same handbooks

apply to all RMs (Snyder Ex. 1 at 87:19-23).

### 3.     Top Line Restaurants Operate Pursuant to the Same Corporately Derived Policies

Top Line's corporate documents further show how RMs are subject to (what then District

Court and now Circuit Court Judge Lynch termed) "comprehensive corporate procedures and

policies" as to which "the duties of the job are largely defined," *Damassia v. Duane Reade, Inc.,*

250 F.R.D. 152, 159 (S.D.N.Y. 2008), an analysis approvingly cited by the Second Circuit in

*Hertz.* 624 F.3d 537.[6]  Here, Mr. Snyder confirmed that all RMs go through the same training

program, (Snyder Ex. 1 at 92:18-24), use the same training materials, and receive access to the

same e-learning resources (Snyder Ex. 1 at 75:6-7).  He testified that the purpose of uniform

training is "so everyone gets the same education" (Snyder Ex. 1 at 93:15-20).  Moreover, all RMs

are subject to the same guiding principles (Snyder Ex. 1 at 77:2-6; 84:16-19), mandatory brand

standards (Snyder Ex. 1 at 78:5—79:3; 97:15-19), including grooming and uniform policies

(Snyder Ex. 1 at 129:23—131:3).  And the same handbooks apply to all RMs (Snyder Ex. 1 at

87:19-23).

---

[6] Judge Lynch's observation in *Damassia* was made in the context of a Rule 23 motion for
assistant store managers.  Beyond the point that the standard for granting a conditional
certification motion under Section 216(b) is far lower than that of a Rule 23 motion, it is not
insignificant to note the many ways Top Line has the same set of "comprehensive corporate
procedures and policies" that supported the Rule 23 class of assistant store managers against the
defendant in *Damassia*. Inasmuch as this kind of evidence would support a Rule 23 motion (in
fact, this was the very kind of evidence that Courts in this Circuit rely upon in certifying Rule 23
New York Labor Law restaurant and retail chain store misclassification cases; *see, Damassia,*
250 F.R.D. at 160; *Youngblood v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389
(S.D.N.Y. Oct. 4, 2011) (certifying class of store managers)), it necessarily supports granting a
first stage conditional certification motion here.

The company used one job posting, which did not vary by the restaurant that had the vacancy (Snyder Ex. 1 at 66:16—67:2).  The company used one offer letter, generated from a form template (Snyder Ex. 1 at 69:3-11). Top Line corporate headquarters also sets "payroll" applicable to RMs in all restaurants. Payroll practices applied to every RM (Snyder Ex. 1 at 71:9—72:16).  Not surprisingly, the testimony is also clear that Plaintiffs, like all RMs, were required to follow Top Line's policies and were not asked to provide any input into those policies. (Frisbie Ex. 3 at 327:16-18).

> **4.   The Compensation Method and Classification is the Same for All RMs**

Finally, and no less importantly, all Top Line RMs nationwide are paid a standard salary, using standardized payroll practices, and uniform benefits. (Snyder Ex. 1 at 69:3-11; 70:16-20; 72:17—73:5).  Top Line maintains a common policy not to pay overtime to all RMs for the hours they work more than 40 in a workweek, instead classifying all RMs as exempt from the FLSA's overtime provisions while expecting RMs to work overtime hours without any additional compensation.  (Russell Ex. 4 236:15-22).

## II.   ARGUMENT

### A.   Conditional Certification Under the FLSA

Plaintiffs bring this collective action on behalf of themselves and other RMs pursuant to FLSA Section 16(b), which allows private civil actions to be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  "FLSA actions are, consequently, not true representative actions as under Rule 23, but instead those actions brought about by individual employees who affirmatively join a single suit."  *Raniere v. Citigroup, Inc.*, 2011 U.S. Dist. LEXIS 13539, at *45-46 (S.D.N.Y. Nov. 22, 2011); *accord, Scholtisek v. The Eldre Corporation*, 229 F.R.D. 381, 386 (W.D.N.Y.

2005).  Thus, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b); Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807, 468-69 (3d ed. 2005); *Lusk v. Serve U Brands, Inc.*, 2018 U.S. Dist. LEXIS 99978, at *24-25 (W.D.N.Y. June 14, 2018) (Telesca, J.).

As observed by the Supreme Court, the benefits of a Section 216(b) collective action provide plaintiffs with "the advantage of lower individual costs to vindicate rights by the pooling of resources," *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989), and further the FLSA's "broad remedial purpose." *Braunstein v. Eastern Photographic Laboratories, Inc*., 600 F.2d 335, 336 (2d Cir. 1978) *accord Hinterberger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944 *33 (W.D.N.Y. Oct. 20, 2009) (Skretny, J.). District Courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche* at 170-171.  Consistent with this managerial responsibility, District Courts often facilitate the notice and joinder process by "conditionally certifying" the lawsuit, thereby enabling other current and former employees to be notified of its existence. *See, e.g., Hertz*, 624 F.3d at 554; *Hinterberger*, 2009 U.S. Dist. LEXIS 97944 at * 32; *Kassman v. KPMG LLP,* No. 11 Civ. 03743, 2014 U.S. Dist. LEXIS 93022, at *12 (S.D.N.Y. July 8, 2014) (granting motion for conditional certification);

Unlike Rule 23 class actions, the commencement of an FLSA collective action under Section 216(b) does not toll the running of the applicable statute of limitations period for the putative class members.  *See* 29 U.S.C. § 256(b).  As such, time is of the essence for the potential opt-ins.  As explained by the United States Supreme Court:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the

9

> discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some time later.
>
> ***
>
> The court is not limited to waiting passively for objections about the manner in which the consents were obtained.  By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.

*Hoffman-La Roche*, 493 U.S. at 171-72 (internal citations omitted); *see also, Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451, at *30 (E.D.N.Y. Apr. 9, 2010) ("early certification and notice are favored in order to protect plaintiffs' rights"); *Scholtisek*, 229 F.R.D., at 391 (even if plaintiff's claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case).

In *Myers v. Hertz Corp.*, the Second Circuit adopted a two-staged process for FLSA collective actions. 624 F.3d at 554-55; *accord, e.g., Hinterberger,* 2009 U.S. Dist. LEXIS 97944, at *12 (pre-*Myers* decision applying essentially same process); *Scholtisek*, 229 F.R.D. 381 (same). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether an FLSA violation has occurred."  *Id.* at 555 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258-62 (11th Cir. 2008)); *Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *13; *Hens v. Clientlogic Operating Corp.,* 2006 U.S. Dist. LEXIS 69021, at *10 (W.D.N.Y. Sept. 22, 2006) (Skretny, J.).

**B.     Plaintiffs' Burden is Minimal at the Notice Stage**

The evidentiary standard for the first step of deciding whether to authorize notice under 29 U.S.C. § 216(b) is "lenient," and "the plaintiffs need make only a 'modest factual showing' that they and the other putative collective action members 'together were victims of a common

10

policy or plan that violated the law.'" *Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at \*13 (citing *Rubery v. Buth-Na-Bodhaige, Inc.,* 569 F. Supp. 2d 334, 366 (W.D.N.Y. 2008)).  The burden at this stage is minimal because "determination that potential plaintiffs are similarly situated is merely a preliminary one." *Scholtisek,* 229 F.R.D. at 387; *Hinterberger,* 2009 U.S. Dist. LEXIS 97944, at \*13.  Courts "frequently grant motions for conditional certification that rely exclusively on the pleadings and sworn affidavits of the plaintiffs." *Nelson, et al. v. Sabre*, 1:15-cv-00314-BKS-TWD (Doc. 75) (N.D.N.Y. Sept. 30, 2016), Ex. 7, at.12.  The first stage is not the appropriate time to undertake the more detailed second stage analysis of determining whether the lawsuit ultimately will proceed as a § 216(b) collective action, and at this preliminary stage, courts in this Circuit "typically grant conditional certification." *Schucker v. Flowers Foods, Inc.*, 2017 U.S. Dist. LEXIS 136178, \*7 (S.D.N.Y. 2017) (citing *Malloy v. Richard Fleischman & Assocs. Inc.*, 2009 U.S. Dist. LEXIS 51790 (S.D.N.Y. 2009);  *Guttentag v. Ruby Tuesday Inc*., 2013 U.S. Dist. LEXIS 82350, \*9 (S.D.N.Y. June 11, 2013); *Ravenell v. Avis Budget Car Rental, LLC*, 2010 U.S. Dist. LEXIS 72563, at \*5 (E.D.N.Y. July 19, 2010); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 661-62 (S.D.N.Y. 2009); *Cunningham v. Elec. Data Sys. Corp*., 754 F. Supp. 2d 638, 643-44 (S.D.N.Y. 2010); *Ibea v. Rite Aid Corp*., 2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec. 14, 2011), *aff'd,* 2012 U.S. Dist. LEXIS 4682 (S.D.N.Y. Jan. 9, 2012); *Gortat*, 2010 U.S. Dist. LEXIS 35451, at \*30.  "At the second stage, the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." *Hertz*, 624 F.3d at 555; *Lora v. To-Rise, LLC,* 2017 U.S. Dist. LEXIS 112644 at \*26 (W.D.N.Y. July 18, 2017) (effectively same enunciation of standard, pre-*Myers*) (Tiscione, J.).

11

At the first stage, "a plaintiff's burden… is minimal, especially since the 'determination that potential plaintiffs are similarly situated' is merely a preliminary one." *Tarrant v. Sutherland Global Servs.*, 2015 U.S. Dist. LEXIS 110356, *3 (W.D.N.Y. Aug. 20, 2015) (Siragusa, J.) (quoting *Scholtisek*, 229 F.R.D. at 387); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("[t]he burden on plaintiff is not a stringent one, and the Court need only reach a preliminary determination that plaintiffs are similarly situated."); *see also, Hens*, 2006 U.S. Dist. LEXIS 69021, at *10; *Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *14; *Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007).  "Similarly situated" at the first stage does not mean (as defendants often try to argue) effective identicality as to the merits of the alleged FLSA violation, but rather only that plaintiff need show a "uniform business practice." *Damassia,* 2006 U.S. Dist. LEXIS 73090, *18.  The Second Circuit explained in *Myers v. Hertz*:

> In a FLSA exemption case, plaintiffs accomplish [showing a common policy or plan that violated the law] by making some showing that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions," on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme.

624 F.3d at 556 (citing *Morgan*, 551 F.3d at 1259).  The merits of the claim – i.e., namely, that Top Line's classification is wrong – is a determination that is not before this Court[7]:

> At this juncture, this Court 'need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here.'  The ultimate determination regarding the merits of the case, and whether

---

[7] In any event, Plaintiff submits that Defendant has waived any defense that the RMs are exempt under the executive or administrative exemptions by failing to plead such defenses with particularity in its Answer.  *See EEOC v. Kelly Drye & Warren, LLP*, 2011 U.S. Dist. LEXIS 80667, at *5 (S.D.N.Y. July 25, 2011) (applying heightened pleading standards to affirmative defenses); *Thornton v. Cty. of Albany*, No. 9:14-CV-679, 2016 U.S. Dist. LEXIS 137287, at *16 (N.D.N.Y. Oct. 4, 2016) (unpled affirmative defense waived).

the class is properly situated - which requires a more 'stringent' inquiry - is made
later in the litigation process, after more thorough discovery.

*Hens*, 2006 U.S. Dist. LEXIS 69021, at *14-15 (quoting *Sbarro*, 982 F. Supp. at 262; other

citations omitted); *accord, e.g., Damassia*, 2006 U.S. Dist. LEXIS 73090, at *15 ("[i]n opposing

court-authorized notice, defendant dedicates a substantial portion of its briefs to the misplaced

argument that plaintiffs' claims fail on the merits. . . . [C]ourts need not resolve the merits in

order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of

authorizing notice.") (citing *Scholtisek*, 229 F.R.D. at 391; *Guttentag v. Ruby Tuesday Inc*., 2013

U.S. Dist. LEXIS, at *5; *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 105

(S.D.N.Y. 2003); *Sbarro*, 982 F. Supp. at 262)); *Indergit v. Rite Aid Corp.*, 2010 U.S. Dist.

LEXIS 60202, at *25-26 (S.D.N.Y. June 15, 2010) (same; quoting *id.*);[8] *Jacob v. Duane Reade,*

---

[8] Judge Larimer stated the matter well in his much-cited, including by this Court, *Rubery* decision
which also involved multistate manager misclassification claims (as well as off-the-clock claims)
and which is worth quoting at length:

> At this juncture, however, plaintiff need not conclusively demonstrate that she
> and the other putative class members are, in fact, similarly situated. Rather, she
> must show that she "and potential plaintiffs together were victims of a common
> policy or plan that violated the law. *Ayers v. SGS Control Servs., Inc.,* 2004 U.S.
> Dist. LEXIS 25646 at *4 (S.D.N.Y. 2004). *See also, Scholtisek, 229 F.R.D. 381,*
> 2005 U.S. Dist. LEXIS 14957 at *22 ("[w]hat *is* important is that these employees
> were allegedly subject to a common practice or scheme on [their employer's]
> part"). Moreover, notwithstanding the substantial class discovery that has taken
> place, "it would be inappropriate . . . to require plaintiff to meet a more stringent
> standard than that typically applied at the early stages of litigation' before
> discovery is complete. *Chowdhury v. Duane Reade, Inc.,* 2007 U.S. Dist. LEXIS
> 73853 at * 10-* 11 (S.D.N.Y. 2007), citing *Prizmic v. Armour, Inc.,* 2006 U.S.
> Dist. LEXIS 42627 (E.D.N.Y. 2006) ("[o]nly after discovery has been completed
> should the Court engage in a second more heightened stage of scrutiny").

> I find that plaintiff has met her burden to demonstrate, by producing affidavits and
> time records from other Shop Managers which are indicative of a common policy
> or plan with respect to the duties and supervisory responsibilities of Shop
> Managers. While there will undoubtedly prove to be variances among the putative
> class members concerning their duration of employment, the extent to which they

*Inc.*, 2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 27, 2012) ("before the Court is not whether

Plaintiffs and other ASMs were identical in all respects, but rather whether they were subjected

to a common policy to deprive them of overtime pay when they worked more than 40 hours per

week.") (quotation omitted).

> Judge Glasser has trenchantly explained why the standard at the first stage is low:

> Because the statute of limitations for FLSA claims continues to run for each
> individual plaintiff until he or she opts in, *see* 29 U.S.C. § 216(b), early
> certification and notice are favored in order to protect plaintiffs' rights.  Thus,
> only a minimal evidentiary burden is imposed in order to satisfy the "similarly
> situated" requirement . . . .  The heightened scrutiny standard is only appropriate
> after the opt-in period has ended and the court is able to examine whether the
> *actual* plaintiffs brought into the case are similarly situated.  It would not sensibly
> serve the purposes of a two-step scheme to impose on plaintiffs a heightened
> burden of proving that as-yet-unknown plaintiffs are similarly situated.

*Gortat,* 2010 U.S. Dist. LEXIS 35451, at *30, *35 (emphasis in original); *see also, e.g.,*

*Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *30 ("It is well settled that [the existence of

certain individuals claims or defenses] does not require an individualized inquiry at this

preliminary stage") (citing *Sexton v. Franklin First Fin., Ltd,*, 2009 U.S. Dist. LEXIS 50526, at

---

> performed non-managerial functions, and the percentage of time, if any, that they
> supervised fewer than eighty subordinate hours per week, plaintiff's fundamental
> allegation is that defendant denied overtime wages to a number of Shop
> Managers, by classifying them as exempt even though their duties and
> supervisory responsibilities fell short of the requirements of the FLSA's executive
> exemption. As such, the class members are "similarly situated *with respect to
> their allegations* that the law has been violated," and preliminary certification is
> appropriate. *Hallissey v. America Online, Inc.,* 2008 U.S. Dist. LEXIS 18387 at
> *6 (S.D.N.Y. 2008) (emphasis added). *See also Parks v. Dick's Sporting Goods,
> Inc.,* 2007 U.S. Dist. LEXIS 20949 at *9-*10 (although similarity considerations
> might prove dispositive on a "second stage" analysis, evidence of discrepancies
> between putative class members is insufficient to defeat FLSA certification at the
> initial stage, due to plaintiff's "relatively lenient" burden to demonstrate that the
> class members were together subjected to the same wage and hour practices, for
> which she may rely on "substantial allegations" of such practices).

*Rubery*, 569 F. Supp. 2d at 337.

*28-29) (E.D.N.Y. June 16, 2009); *Parks v. Dick's Sporting Goods, Inc.*, 2007 U.S. Dist. LEXIS

20949, at *12 (W.D.N.Y. Mar. 21, 2007) (court declined to apply fact-specific inquiry into job

duties or other potentially distinguishing circumstances at conditional certification stage);

*Gjurovich*, 282 F. Supp. 2d 101, 105 ("Should it become clear later that the parties who have

opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary

and appropriate to ensure that the case is properly formed.").  Importantly, a "named plaintiff in

a collective action need not demonstrate other facts – numerosity, commonality, typicality, and

adequacy of representation – which are required to bring a class action under Rule 23 of the

Federal Rules of Civil Procedure."  *Nelson*, 1:15-cv-00314-BKS-TWD, Ex. 7, pp. 7-8 (internal

citations and quotations omitted).

        Once the court determines that potential class members are similarly situated, it

"conditionally certifies" the collective action and authorizes notice to potential collective-action

members, who may "opt-in" under Section 216(b) by filing written consents.  The action then

"proceeds as a representative action throughout [merits] discovery." *Scholtisek*, 229 F.R.D. 381,

387; *Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022, at *39 (S.D.N.Y. Aug. 17, 2005).

### C.      Plaintiffs' FLSA Claims Should be Conditionally Certified

        This Court should conditionally certify Plaintiffs' FLSA claims. The evidence here,

including Defendant's direct admissions, Plaintiffs' testimony, and corporate documentation, all

describe the RM position, by design, as being subject to Defendant's common policies and

schemes.  – – The evidence is clear, and in fact is substantially more extensive than in most

FLSA collective actions  *See, e.g., Ferreira v. Modell's Sporting Goods, Inc.,* 2012 U.S. Dist.

LEXIS 100820 (S.D.N.Y. July 16, 2012) (granting conditional certification in a similar

multistate assistant store manager ("ASM") misclassification case with deposition testimony

from one plaintiff, several signed declarations from ASMs, and documentary evidence of uniform exemption policies); *McEarchen v. Urban Outfitters, Inc.*, No. 13-CV-3569, 2014 U.S. Dist. LEXIS 76937 (E.D.N.Y. June 3, 2014) (same result, based on pleadings and defendants' admissions made on the record during court conference); *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 228 (D. Conn. 2012) (approving five state assistant Price Rite store manager conditional certification and notice based upon five declarations (no depositions), one Rule 30(b)(6) deposition and corporate documents); *Indergit*, 2010 U.S. Dist. LEXIS 60202 (approving Section 216(b) notice to 8,400 nationwide (except California) Rite Aid store managers based upon three affidavits and corporate documents, including a "Store Management Guide" and a job description); *Parks*, 2007 U.S. Dist. LEXIS 20949 (affirming Magistrate Judge Feldman's conditional certification of 35-state, 275 store collective action of "Golf Pros" (as here, the level below store manager) based upon affidavits from five employees from five states, a job posting and an organizational chart) (Siragusa, J.); *see also, e.g., Goodman v. Burlington Coat Factory*, 2012 U.S. Dist. LEXIS 166910 (D.N.J. Nov. 20, 2012) (certifying 44-state (465 store) Burlington Coat assistant store managers collective action based upon a single Rule 30(b)(6) deposition, three plaintiff and opt-in depositions, two declarations and corporate documents akin to those here); *Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) (conditional certification for nationwide FLSA collective action of more than 8,000 Rite Aid assistant store managers, except those in California, based on plaintiff's pleadings, uniform job advertisements and the affidavits (no depositions) from assistant store managers from eight states).

Indeed, any of the pieces of evidence presented here – the deposition testimony of Plaintiffs, or the admissions of Top Line's corporate designated witness, or Top Line's corporate

documents describing and defining the RM position – alone would support the relief sought and suffice to meet Plaintiffs' "lenient" burden of "some evidence." Taken together, there can be no reasonable question to the contrary.

As here, once a plaintiff has met his burden, courts have refused to consider a defendant's argument that differences exist among the class of employees. *See Griffiths v. Fordham Financial Management,* 2013 U.S. Dist. LEXIS 72909, *8 (S.D.N.Y. May 22, 2013) (discounting defendant's contravening evidence); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 488 (S.D.N.Y. 2009) (defendants' contradictory affidavits were insufficient "to prevent Plaintiffs from meeting their 'minimal' burden of a 'modest factual showing' on its motion for conditional certification under FLSA."); *Winfield v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 16449, at *25 n.6 (S.D.N.Y. Jan. 27, 2012) ("courts in this Circuit regularly conclude that [defendant's] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); *Jacob v. Duane Reade*, *supra*, 2012 U.S. Dist. LEXIS 11053 at *22 ("In an attempt to demonstrate the diversity of ASMs' job functions, Defendants have submitted deposition testimony and declarations from current employees. The Court, however, declines to weigh Plaintiffs' and Defendants' competing testimony at this phase of the litigation.") (citation omitted); *see also*, *e.g.*, *In re Penthouse Executive Club Comp. Litig.*, 2010 U.S. Dist. LEXIS 114743, at *12 (S.D.N.Y. Oct. 27, 2010) (defendants' submission of competing affidavits "amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage."); *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 179 (D. Conn. 2010) (refusing to consider defendant's declarations); *Alli v. Boston Market*, 2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) (same); *Creely v. HCR Manorcare*, 2011 U.S. Dist. LEXIS 61376, at *62-63 (N.D. Ohio June 9, 2011) (dismissing 35

17

"happy camper" declarations submitted by defendant as "of little use" on a Section 216(b)

motion); *Raimundi v. Astellas US LLC*, 2011 U.S. Dist. LEXIS 124484, at \*2-3 (S.D.N.Y. Oct.

27, 2011) (variations among collective action members not relevant at first-stage).

  In short, Plaintiffs have plainly met the *Hertz* requirements of showing "some" evidence

of similar job requirements and pay provisions for a misclassification claim – indeed, far from

showing "some" evidence, there is substantial such evidence presented and in several different

forms.  RM's at Top Line are governed by the same set of designated job duties and

responsibilities, are compensated in the same manner, are classified as exempt from the FLSA's

overtime provisions, and are subject to the same job description, corporate policies and work

rules.  Top Line has a "uniform business practice" of treating RMs similarly throughout the

United States.  *See* pages 3-4, 7-8 above (citing, *inter alia*, *Damassia*, 2006 U.S. Dist. LEXIS

73090 at \*18).  As shown (page 4, above), Top Line has an admitted uniform and common

policy not to pay overtime to RMs.  Just as in the *Duane Reade* cases (pages 7, 12, and 13, those

decided by both Judges Lynch and Oetken), the *Rite Aid* cases (pages 11, 13, 16, both the two

within this Circuit as well as the case in Pennsylvania), the *Dick's* case (page 14), the *Rubery*

case (page 13, which involved Body Shop managers), the *Modell's* case, the *PRRC* (page 15,

Price Rite) case, the *Burlington Coat* case (page 16), and so forth, cited above, Section 216(b)

certification and notice for the assistant restaurant manager FLSA misclassification claim is

proper here.

  Further, and while many of the Section 216(b) decisions in this Court look largely to

declarations and affidavits, here, not only is there evidence adduced from the depositions of

Plaintiffs (which are more "reliable" than declarations, as Judge Lynch, for one, has noted, *see,*

*Damassia*, 250 F.R.D. at 160), but this motion is also supported by Top Line's own corporate

admissions and documents.  As Judge Haight wrote in conditionally certifying another assistant manager collective action on similar facts:

> [U]niform PriceRite corporate policy details employees' job duties; the same detailed job description is given to each ASM which each ASM is required to follow; corporate efforts are made to ensure that ASMs' jobs are uniform and consistent from store to store and state to state; the ASM position has not changed in 17 years; there is only one ASM job description and one set of duties for all PriceRite stores; those job descriptions are provided to ASMs to instruct them as to their duties; and all ASMs, for all stores and in all states, are trained in the same way through methods supervised by the same individual.
>
> Employers' use of practices such as these appear with regularity throughout the cited cases.  They make good business sense.  The Court is not critical of them.  However, when such practices respecting a particular group of employees are coupled with the employer's uniform classification of all members of that group as 'exempt,' the conclusion is compelled that the employees are 'similarly situated' for purposes of an FLSA action challenging the validity of the exemption.

*Zaniewski v. PRRC Inc.,* 848 F. Supp. 2d 213, 228 (D. Conn. 2012) (also summarizing other Second Circuit district court misclassification certifications); *Ravenell*, 2010 U.S. Dist. LEXIS 72563, at *11-12 (certifying nationwide collective action of Avis shift supervisors (akin to assistant store managers); "Plaintiffs' argument is buttressed by Avis's own corporate documents, which reveal that all Avis shift managers, wherever located, were treated as part of a category of similarly situated employees"); *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *36 (the plaintiff, like here, "has cited corporate documents indicating that store managers had similar duties, that decisions regarding the content of their job descriptions and their classification as exempt from the FLSA were made at the national corporate level, and that [the employer] maintained a high degree of control over its store managers' daily tasks through nationwide corporate policies and procedures."); *Ferreira,* 2012 U.S. Dist. LEXIS 100820, at *8  (plaintiff's testimony and uniform corporate policies show that "the job descriptions for Assistant Managers demand the performance of nonexempt duties").

Based on the foregoing, this Court should authorize court-supervised notice because the evidence adduced demonstrates that Defendants have a uniform policy and practice not to pay their RMs an overtime premium for hours worked over 40 in a workweek.  Accordingly, a collective action, at least for notice purposes, is the most appropriate way to address the legality of Top Line's common policy not to pay overtime to RMs.

### D.   The Court Should Approve Plaintiffs' Proposed Notice and Notice Process

### 1.   Plaintiffs' Proposed Notice is Timely, Accurate, and Informative

The Court should approve Plaintiff's proposed Collective Action Notice and Consent to Join form ("Notice and Consent Form"), Ex. 8. The Notice and Consent Form is "accurate" and "informative" and is consistent with the model notices published by the Federal Judicial Center. *See Hoffmann-La Roche*, 493 U.S. at 172.

### 2.   The Notice Should Be Sent to All RMs Who Worked Within Three Years of the Filing of the Complaint

If the Court grants this Motion, it should authorize the Notice to be sent to all RMs whom Top Line classified as exempt at any time between April 28, 2014 and the date on which the Court grants this Motion (the "Collective"). The Court should toll the statute of limitations for all Collective Members from April 28, 2014, the date on which Plaintiffs filed their motion, given the delay that Top Line has caused in this matter. Courts routinely allow for tolling during the pendency of a motion for conditional certification. *See, e.g., Nelson,* 1:15-cv-00314-BKS-TWD, Ex. 7, pp. 20-21; *Kassman*, 2014 U.S. Dist. LEXIS 93022, at *23-24 (tolling statute of limitations from the date on which plaintiffs filed their motion for conditional certification); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in an FLSA case, may be deemed an extraordinary circumstance justifying application of

20

the equitable tolling doctrine") (citation and internal quotation marks omitted). Alternatively, at minimum, the statute of limitations should be tolled from the date of the filing of this motion, August 22, 2018.

      **3.**     **The Court Should Order Top Line to Produce Contact Information for the Collective**

In order to facilitate notice, Plaintiff requests that the Court order Top Line to produce a computer-readable list of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Collective Members, and the Social Security numbers of those Collective Members whose notices are returned undeliverable. The production of such contact information is consistent with "the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in . . . ." *Morris v. Lettire Constr. Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). Courts routinely grant such requests. *See Nelson,* 1:15-cv-00314-BKS-TWD, Ex7, pp. 18-19; *Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114, 130 (S.D.N.Y. 2014) (ordering production of computer-readable list of all names, addresses, telephone numbers, e-mail addresses, and social security numbers for distribution of notice); *Hamadou v. Hess Corp*., 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013) (requiring defendants to supply a "computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, work locations, e-mail addresses, dates of employment, dates of birth, and last four digits of the individuals' Social Security nu_mbers."); *Ack v. Manhattan Beer Distribs.*, No. 11-CV-5582, 2012 U.S. Dist. LEXIS 67883, at *21 (E.D.N.Y. May 15, 2012) (ordering the production of names, addresses, phone numbers, and e-mail addresses); *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 U.S. Dist. LEXIS 949, at *41 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, . . . email notice in

addition to notice by first class mail is entirely appropriate."); *Gambino v. Harvard Prot. Servs. LLC*, No. 10 Civ. 0983, 2011 U.S. Dist. LEXIS 2533, at *7 (S.D.N.Y. Jan. 11, 2011) (ordering the production, in a computer-readable format, of names, mailing addresses, telephone numbers, and email addresses of potential opt-in plaintiffs).

The Court should also authorize Plaintiff to send the proposed Reminder Postcard, attached as Ex. 9, part-way through the notice period. It is well-documented that people often disregard collective action notices. *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008). Courts in this Circuit regularly authorize reminder notices in order to increase the likelihood that collective members receive notice of their rights. *See Nelson,* 1:15-cv-00314-BKS-TWD, Ex. 7, p. 20 (permitting reminder notice); *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 U.S. Dist. LEXIS 135926, at *51 (S.D.N.Y. Sept. 19, 2013) (authorizing reminder notice "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in"); *Morris*, 896 F. Supp. 2d at 275 (same); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 466 (E.D.N.Y. 2014) (authorizing reminder notices); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) (same); *Limarvin v. Edo Rest. Corp.*, No. 11 Civ. 7356, 2013 U.S. Dist. LEXIS 22431, at *9-10 (S.D.N.Y. Jan. 21, 2013) (same). Defendant has no reason to oppose a reminder mailing other than that it may increase the participation rate, which is not a good reason. Plaintiffs will bear the cost of the reminder mailing, and the reminder mailing will not change the end of the notice period. Defendant will not be prejudiced at all.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully submit that the Court: (1)

conditionally certify the proposed collective; (2) order Top Line to produce the computer-

readable list described above; and (3) authorize Plaintiffs to mail and email the proposed Notice

and Consent to Join form and the Reminder Postcard to the Collective.

Dated: August 22, 2018
      Rye Brook, NY

By: _____
Seth R. Lesser
Fran L. Rudich
Christopher M. Timmel
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

Nicholas A. Migliaccio
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H St NE, Suite 302
Washington D.C. 20002
Telephone: (202) 470-3520

Jack Landskroner
Drew Legando
LANDSKRONER GREICO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, OH Suite 200
Telephone: (216) 522-9000

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 22, 2018, the foregoing was electronically filed with the Clerk of this Court using the CM/ECF system which sent notification of such filing to all counsel of record.

_____

**Attorneys for Plaintiff, the Collective and the NY Class**