# KLAFTER OLSEN & LESSER LLP
## ATTORNEYS AT LAW

Two International Drive • Suite 350 • Rye Brook, NY 10573
914-934-9200 • Fax 914-934-9220 • www.klafterolsen.com

April 2, 2019

**Via ECF**

Hon. Frank P. Geraci, Jr.
Chief United States District Judge
U.S. Courthouse
100 State Street
Rochester, New York 14614

    Re:  *Frisbie v. Feast American Diners, LLC et al.*, 6:17cv6270

Dear Judge Geraci:

    The parties submit this joint letter in support of the settlement in the above-referenced Fair Labor Standards Act ("FLSA") action.  The settlement agreement is attached as Exhibit A.[1]  The parties believe the settlement is a fair and reasonable resolution of disputed issues and warrants approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

    **I.**    **Summary of Claims, Defenses, and Negotiations**

    This putative class and collective action seeks to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law, Article 19 §§ 650, et seq. ("NYLL") on behalf of Assistant Restaurant Managers ("RMs") who worked at Denny's restaurants operated by Feast American Diners, LLC ("Feast") and Top Line Restaurants, Inc., from whom Feast purchased 24 Denny's restaurants in September 2015 -- 17 in New York and 7 in Arizona. Plaintiff John Frisbie and Opt-In Rebecca Russell (together, "Plaintiffs") assert that Feast misclassified RMs as exempt from overtime because the RMs primary, actual duties did not involve managerial work and because they did not have regular and meaningful input in hiring, firing, and other employee status determinations from when Feast acquired their restaurants to the present.  The

---

[1] One paragraph of the Settlement Agreement being filed herewith is redacted because that relates to information concerning the Defendant's financial status.  Should the Court request that information, the parties have agreed to ask that those provisions be marked confidential and that any such filing respecting them should be under seal.

Hon. Frank P. Geraci, Jr.
Page 2 of 10
April 2, 2019

present settlement only encompasses Feast; the claims against Top Line are proceeding.

Plaintiff John Frisbie filed this Action on April 28, 2017 and Opt-In Plaintiff Rebecca Russell filed her consent to join on August 17, 2017. Feast answered the Complaint on June 30, 2017, in which it asserted 36 affirmative defenses. Pursuant to Judge Feldman's September 13, 2017 Discovery Order, the parties entered into first-phase discovery.

The first phase discovery as to Feast consisted of Plaintiff propounding written discovery, which led to Feast producing numerous policy and practice manuals, procedurals, and other materials, and then a Rule 30(b)(6) deposition of Feast. This discovery confirmed Plaintiffs' claims that Feast operated on a unified and comprehensive basis across all its Denny's franchise operations which would have permitted the filing of a motion for notice and conditional certification under Section 16 of the FLSA.

Feast deposed Plaintiffs Frisbie and Russell and propounded written discovery on them. In their depositions, Plaintiffs testified that 90 percent of their job duties were "job coding," which entailed nonsupervisory tasks including cleaning, cashiering, seating customers, and cooking. *See* Plaintiffs' Motion for Conditional Class Certification, DE 47-1, pp. 4-6. Essentially, Plaintiffs were asked to do the same work being done by the hourly, non-exempt employees. *Id.*

Plaintiff Russell testified that though RMs were to work 40 hours a week, they were either told to, or expected to work, at least 50 hours a week, without being paid overtime compensation. *Id.* Plaintiffs testified that the RMs throughout different locations of Feast Denny's performed similar tasks. *Id.* Plaintiffs contend that their experiences are not outliers, but, are the byproduct of a common set of policies and practices at Feast's restaurants. In May of 2016, Feast reclassified the RM position as a non-exempt, hourly position.

Before filing a motion to certify a collective action of RMs, the parties were required by this Court to engage in mediation. The parties engaged in negotiated discussions facilitated by the Court-approved mediator Steven A. Modica in July 2018. The negotiations with Top Line proved unsuccessful, but the negotiations with Feast found some common ground. Plaintiffs and Feast continued negotiating into early this year, when they reached an amicable resolution, which is reflected in the proposed Settlement Agreement, Exhibit A.

Hon. Frank P. Geraci, Jr.
Page 3 of 10
April 2, 2019

**II.     Settlement Terms**

The proposed settlement resolves the claims of Plaintiffs Frisbie and Russell and all settlement collective members. Including the named Plaintiffs, there are 65 individuals encompassed by the settlement. The salient terms of the settlement are as follows:

Settlement Payment and Allocation: Feast will make a total payment of $120,000, which includes all attorneys' fees, costs, settlement administration fees, Named Plaintiff service payments, and damage payments to the settlement collective action members ("Settlement Payment Amount"). Exhibit A § 1. The "Settlement Pool" is the net amount remaining when attorneys' fees, costs, settlement administration fees, and service payments are deducted from the Settlement Payment Amount. *Id*. The computation of the payments to putative collective action members is based on data provided by Feast. *Id.* at § 2. The Settlement Pool will be allocated to the settlement collective members on a pro rata basis determined by Plaintiffs' Counsel, *id.* at § 3. Plaintiffs' Counsel have decided theses settlement payments should be pro rata based upon weeks worked by the settlement collective members, the same form of settlement allocation that Plaintiffs' Counsel have employed – and have been approved – in numerous FLSA settlements in this Circuit (and beyond) including before this Court.[2]

Of note, this Settlement is a direct pay settlement: upon this Court's approval, each of the settlement collective members will be directly paid their proportionate share. As with other direct-pay FLSA collective settlements in this manner, there are no claim forms necessary and, rather, the settlement check will constitute their consent to the settlement and effectuate their release of claims.[3]

The requested service awards here being sought are $2,000 each for the two Named Plaintiffs. Such a service award is, if anything, modest for a FLSA case, particularly one, as here, where the two Named Plaintiffs , who not only

---

[2] *See*, *e.g.*, *Robbins v. Abercrombie & Fitch Co.*, No. 15-cv-6187 (FPG) (order approving settlement) (W.D.N.Y. Sept. 6, 2016); *Heitzenreiter v. OfficeMax, Inc.*, No. 12-cv-0900 (WMS) (order approving settlement) (W.D.N.Y. June 2, 2016);

[3] In the event that any settlement class member does not wish to take part in this settlement, they need not sign the check they will receive, in which case their claims will not be released.

were willing to put themselves forward by suing their former employer but substantially aided Plaintiffs' counsel in litigating the case and also by sitting for depositions.[4]

As to claims administration costs, Plaintiffs have negotiated a total administration cost of $7,500 from RG2 Claims Administration LLC, an experienced claims administrator, including in handling other FLSA class settlements. Plaintiffs' counsel can represent from experience this is a most reasonable administration amount for a FLSA settlement of this size.

Attorneys' Fees and Costs: As part of the Settlement, the Defendants have agreed not to oppose Plaintiffs' counsel application for reasonable attorneys' fees and costs. *Id.* at § 4. Here, Plaintiffs' counsel was successful in obtaining relief for RMs who otherwise would not have recovered, or even been aware of, their entitlement to relief. Plaintiffs' counsel request one-third (1/3) of the gross settlement for attorneys' fees in the amount of $40,000. This is not only consistent with percentage of the fund method generally used within this Circuit to compensate attorneys in common fund cases such as this, but it specifically well-recognized to be the overwhelmingly proper amount in FLSA class and collective action settlements. *E.g.*, *Taylor v. Delta-Sonic Car Wash Sys.*, 2017 U.S. Dist. LEXIS 14394, at *26 n.2 (W.D.N.Y. Jan. 31, 2017) ("awarding attorney fees of one third of a settlement fund in FLSA actions has been viewed as 'consistent with the norms of class litigation" in the Second Circuit.'"); *accord, e.g., Heitzenreiter, supra*.[5] And since courts in the Circuit also engage in a lodestar cross-check to ensure the reasonableness of the fee, Plaintiffs' Counsel can represent that their lodestar, specifically applicable to litigating against Feast (not including time applicable to litigating the claims against Top Line) totals $77,417.91.[6] Thus, the fee request of $40,000 represents a most substantial negative multiplier (just short of 50%)

---

[4] *See, e.g.*, *Robbins*, supra (this Court awarded service awards of $9,500 and $7,000 in mid-manager misclassification case); *Stallard v. Fifth Third Bank*, Civ. No. 12-cv-1092, Dkt. No. 181 (W.D. Pa. Feb. 25, 2015) (awarding service awards of $10,000 to named plaintiffs in FLSA-only collective action settlement); *Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235 at *26 (D. Utah Sept. 30, 2015) (awarding service awards of $7,500 to each of seven named plaintiffs in FLSA-only collective action settlement); *Stevens v. Safeway, Inc.*, 2008 U.S. Dist. LEXIS 17119 at *34-37 (C.D. Cal. Feb. 25, 2008) (awarding service of awards of $20,000 and $10,000 to two named plaintiffs in FLSA collective action-only settlement).

[5] There are tens of other similar cases from within the Circuit, which can be provided to the Court should it wish to see them.

[6] Full time detail can be provided should the Court wish to review it but, given the extent to which the fee recovery will be a substantial negative multiplier, we would respectfully submit that the exercise would serve little purpose.

against the time value of what was expended by Plaintiffs' counsel on an entirely contingent fee basis; this further supports approval of the attorneys' fee request.

As to costs, Plaintiffs' counsel incurred costs totaling $7,507.44 in litigating and settling the claims against Feast (this, again, does not including costs incurred in litigating against Top Line). This was out-of-pocket costs incurred by counsel and again as with time records, full detail of these charges – down to copies of receipts – can be provided to the Court upon request.

<u>Release and Dismissal of Claims</u>: Each Named Plaintiff has agreed to dismiss his or her individual lawsuit with prejudice in exchange for the settlement payments provided in the Settlement. *Id.* at § 7. Additionally, Named Plaintiffs, and settlement collective action members, agree to release:

> claims for unpaid wages, overtime, retaliation or other compensation, fees/costs, liquidated damages, penalties, and all other relief under the FLSA and all other state and local wage/hour and wage payment laws and common law theories arising or accruing prior to January 18, 2019 against Defendant, including their former and present officers, directors, employees, attorneys, insurers, benefit plans, predecessors, successors, parents, sponsors, subsidiaries, and affiliates ("Released Parties"). Putative collective action members shall be deemed to release their claims upon cashing their settlement checks through a release contained on the back of their settlement checks.

*Id*. The Parties agree that the proposed settlement terms shall remain confidential and not be disclosed to the media or public until filing the settlement approval motion. *Id.* at § 13.

### III. The Proposed Settlement is Fair and Reasonable

"The relevant standard in this Circuit for approval of FLSA settlements, which is lower than that for Rule 23 settlements, is that "[c]ourts generally approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Brown v. Mustang Sally's Spirits & Grill, Inc.*, 2013 U.S. Dist. LEXIS 13482 at *2 (W.D.N.Y. Jan. 31, 2013) (quotation omitted). Courts view the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement, and "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Hens v. ClientLogic Operating Corp.*, No. 05-CV-381S, 2010 U.S. Dist. LEXIS 139126 (W.D.N.Y. Dec. 19, 2010) at *5.

Courts in this Circuit generally apply the *Wolinsky* factors and counterfactors, discussed below, to determine whether a settlement is fair and reasonable. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012); *see also Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 550-51 (W.D.N.Y. 2018) (applying *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) to approve a joint motion to settle FLSA claims); *Calixto v. Gomez Enters. USA Corp.*, 2019 U.S. Dist. LEXIS 6592 (S.D.N.Y. Jan. 11, 2019) (same); *Scott v. BK Beasts LLC*, No. 17-CV-699 (RRM) (PK), 2018 U.S. Dist. LEXIS 75928 (E.D.N.Y. May 3, 2018) (same). In light of these standards, a request for approval is warranted.

**A. The Settlement Resolves Contested Litigation Over a Bona Fide Dispute**

Where an FLSA settlement reflects a reasonable compromise over the contested issues, it should be approved. See *Brown*, 2013 U.S. Dist. LEXIS 13482, at *2. The existence of *bona fide* contested issues is clear: Feast maintained that its classification of RMs was proper and that, in addition to having not violated the FLSA, if it had violated the law, it had not done so willfully. Multiple disputed questions of fact and law exist – from the facts of what RMs did, to the legal implications to be drawn from those facts, to what would constitute the proper standards for willfulness and good faith and even to how damages are determined.

If Plaintiffs' allegations were ultimately correct, Feast would face the prospect of a monetary judgment in favor of Plaintiffs. Feast would also potentially face the obligation to pay litigation fees and costs incurred by Plaintiffs. Here, Feast's exposure was limited to 840 workweeks, which occurred in the two-year FLSA period. Using a conservative 52.5-hour average workweek assumption, and the average salary of Feast's RMs ($37,415), the potential unpaid overtime amounts to approximately $283,399. With liquidation, this would possibly have grown to $566,798. And Feast would also be exposed to paying Plaintiffs' attorneys' fees and costs.

If Defendants' arguments were correct, then Plaintiffs would not recover anything or the recovery would be substantially less than what Plaintiffs sought. The Parties were represented by able counsel throughout this litigation.[7] Each

---

[7] Should the Court request it, Plaintiffs' counsel can provide firm resumes and information regarding their extensive experience in litigating FLSA misclassification cases. For present purposes, we can represent that the three firms here have successfully handled dozens of such cases, have taken such cases to trial, and have obtained, among

Hon. Frank P. Geraci, Jr.
Page 7 of 10
April 2, 2019

side has substantial arguments to support its legal position on issues such as whether Plaintiffs were properly classified as exempt, whether Plaintiffs could establish a willful violation of the FLSA extending the statute of limitations from two years to three years, and the proper calculation of potential overtime damages. Accordingly, the Court should readily conclude a *bona fide* dispute between the Parties existed under the FLSA.

### B. The Proposed Settlement Satisfies the *Wolinsky* Factors

When reviewing the fairness and reasonableness of FLSA settlements, courts should consider:

> the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Snead*, 286 F. Supp. 3d at 550 (quoting *Wolinsky*, 900 F. Supp. 2d at 335) (internal quotations and citations omitted). Other factors may weigh against settlement approval, such as:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA noncompliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either or in an industry or in a workplace.

*Id.* at 550-51. Here, each of the *Wolinsky* factors and counterfactors, discussed in *Snead*, *supra*, support settlement approval.

---

other things, the largest FLSA misclassification settlements obtained in a number of federal Courts. It is, we would submit, fair to say that our firms have gained no small measure of respect and recognition for the work we have done for our clients in these cases. As here relevant, we can state that we believe the result obtained is an excellent one for the Settlement class members.

### 1. Range of Possible Recovery and Seriousness of Litigation Risks (Factors 1 and 3)

Determining whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). Furthermore, "[i]t is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Com'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*, 228 F.R.D. at 186. When a settlement assures quick payment of significant amounts, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement can be reasonable. *Schaubeck v. Morris Pharmacy*, Inc., 2018 U.S. Dist. LEXIS 183086, at *6 (S.D.N.Y. Oct. 25, 2018). Having said this, for the reasons set forth in the next paragraph, the Settlement here – Plaintiffs' counsel believes – represents an excellent result.

The proposed settlement represents a fair and reasonable (if not excellent) result, one reached through extensive negotiations over contested issues with significant assistance from a mediator. The $120,000 settlement would represent over 40% of the total damages obtainable if Plaintiffs succeeded in the litigation on a non-liquidated basis and even 20% on a liquidated basis, either of which is a reasonable settlement in the FLSA area, but it is particularly reasonable because the Settlement was agreed to and reached based on information from the Defendant as to its limited financial resources. *See* note 1, above. In exchange for releasing their claims and terminating their individual actions, the average gross settlement amount allocated to each collective settlement member is estimated to be approximately $1,846.15. Although every case is different, and the settlement was tailored to the parties' assessment of Plaintiffs' claims here, the gross recovery afforded Plaintiffs is comparable if not in excess to other recent settlements of chain store and restaurant misclassification cases in this Circuit. Thus, gross recoveries in other in other managerial misclassification action settlements have been $1,561 (*Alli v. Boston Market Corp.*, No. 10-cv-0004 (D. Conn.) (food restaurant chain store assistant manager misclassification case; final approval obtained April 17, 2012 for $3 million for 1,921 class members); $1,213 (*Robbins v. Abercrombie & Fitch Co.*, No. 15-cv-6187 (FPG) (W.D.N.Y.) (final approval obtained Sept. 6, 2016 for $5.25 million for 4,329 assistant managers); $1,771 (*Jenkins v. Sports Authority*, No. 09-cv-224 (E.D.N.Y.) (final approval obtained September 30, 2011 for $990,000 settlement for class of 559 co-managers); and $1,161 (*Ferreira v. Modell's Sporting Goods, Inc.*, No. 11-cv-2395

(S.D.N.Y.) (final approved obtained March, 12, 2015 for $800,000 settlement for class of 689). This average gross settlement considers the amount of attorneys' fees that Plaintiffs' counsel will seek, Plaintiffs' litigation costs, anticipated notice and claims administration fees, and modest service awards to the Plaintiffs deposed. A settlement now means that Plaintiffs and all putative Opt-In Plaintiffs are assured a good outcome without the need to vigorously litigate each of their individual claims. Feast denied (and continues to deny) all of Plaintiffs' allegations, and likely would have used a bad ruling in any one Plaintiff's case to undermine the other Plaintiffs' claims, leading to enhanced risk or potentially weaker settlement opportunities. A settlement in this range is fair and reasonable and reflects Plaintiffs' counsel's thorough assessment risks on both sides.

> **2. Arm's-Length Bargaining Between Experienced Counsel, Absence of Fraud or Collusion, and the Extent to Which Settlement Will Enable the Parties to Avoid Burdens and Expenses in Establishing Their Respective Claims and Defenses (Factors 2, 4, and 5)**

The proposed settlement results from arm's-length bargaining between counsel with substantial experience in FLSA collective action litigation. The procedural history reflects a hard-fought litigation and this agreement is the product of a contested mediation with an experienced mediator. *See Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15 Civ. 6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (settlement approved where "plaintiff and defendant [were] represented by attorneys experienced in wage-and-hour litigation"); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same).

> **3. Similarly Situated Employees, Likelihood that Plaintiffs' Circumstance Will Recur, and History of FLSA Non-Compliance by Defendant, and Desirability of a Mature Record and Development of the Law (Counterfactors 1-4)**

None of the factors that weigh against settlement approval are present here. First, any similarly situated employees are invited to join this lawsuit as Opt-In Plaintiffs and recover unpaid overtime pay. Second, Plaintiffs' counsel are unaware of similar ongoing FLSA violations. Importantly, Feast reclassified the RM position as non-exempt in May 2016. The circumstances that led to the present claims are unlikely to recur. Third, Plaintiffs' counsel is not aware of a history of FLSA non-compliance outside of the allegations raised here. Finally, litigating this lawsuit to judgment would only marginally advance the development of the law. If the putative class of RMs is not certified, any individual lawsuits brought could

Hon. Frank P. Geraci, Jr.
Page 10 of 10
April 2, 2019

cause inconsistent findings – effectively muddying versus clarifying the law in this sphere. These factors do not weigh against approving the settlement.

### IV.     Conclusion

      For all the reasons set forth above, the parties respectfully request that the Court grant this Motion by entering the proposed approval order.

                                          Respectfully submitted,

                                          Seth R. Lesser

Cc: All counsel of record via ECF
Enclosure