UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JOHN FRISBIE, Individually and on Behalf of All Other
Persons Similarly Situated,

                          Plaintiffs,

          -against-

Case No.: 6:17-cv-06270

TOP LINE RESTAURANT, INC., TOP LINE
MANAGEMENT, LLC, FEAST FOODS, LLC, FEAST
AMERICAN DINERS, LLC, and REVEILLE
MANAGEMENT, LLC

                          Defendants,
------------------------------------------------------------------------X

## DEFENDANTS OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CONDITIONAL CERTIFICATION

*Attorneys for Defendants Top Line Restaurant, Inc., Top Line Management, LLC and Reveille Management, LLC*
Robert W. Hellner, Esq.
Matthew P. Gizzo, Esq.
WOOD, SMITH, HENNING & BERMAN LLP
685 Third Avenue, 18th Floor
New York, NY 10017
(212) 999-7100
e-mail: rhellner@wshblaw.com
e-mail: mgizzo@wshblaw.com

LEGAL:10871-0001/11462942.1

**ARGUMENT**

**PLAINTIFFS' DID NOT SUPPLEMENT THE TESTIMONY OF PLAINTIFFS FRISBIE AND RUSSEL WITH FURTHER DETAILS OR AMPLIFICATION**

Preliminarily, Top Line highlights that, at oral argument on Plaintiffs' initial motion for conditional certification, the Court inquired as to why Plaintiffs' did not provide further specificity or amplification, either through testimony or declaration, of Plaintiff Frisbie and Russell's assertions that they know about and observed Restaurant Managers at other Top Line locations that performed similar tasks as they did, which they claim were primarily non-managerial. However, despite this inquiry by the Court, Plaintiffs have not submitted further testimony or declarations from Plaintiffs Frisbie or Russell in an effort to remedy these deficiencies. Rather, Plaintiffs have now submitted declarations from four other former Top Line Restaurant Managers – Debra Ross, Peter Dietzman, Christina Buckles, and Henry Diaz; all of which lack the same details that the Court inquired about in the first instance.

**THE COURT SHOULD DISREGARD THE DECLARATION OF HENRY DIAZ**

The Declaration of Henry Diaz submitted in support of the renewed motion for conditional certification should not be considered by the Court, as Mr. Diaz's tenure as a Restaurant Manager and his overall employment with Top Line ended prior to any applicable statute of limitations.

The statute of limitations with respect to claims under the Fair Labor Standards Act (the "FLSA") is two years, but extends to three if the defendants are fount to have committed a willful violation. 29 U.S.C. § 255(a).[1]

---

[1] It is worth noting that Arizona, which is where Mr. Diaz was employed, does not have its own wage and hour overtime laws. Instead, Arizona follows the FLSA, meaning the same statute of limitations period would apply to any overtime claim asserted by Mr. Diaz.

Here, Plaintiffs filed their initial motion for conditional certification on August 22, 2018. Assuming, *arguendo*, that the Court grants Plaintiffs conditional certification and notice with respect to the longer of the limitations periods available under the FLSA (which Top Line submits it should not), the limitations period only extends back as far as August 22, 2015, assuming that the Court were to grant tolling of the statute from the date Plaintiffs filed their initial motion for conditional certification without interruption.

Here, Plaintiffs have submitted a Declaration from Mr. Diaz which states that he worked as a Restaurant Manager at Top Line's Casa Grande, Arizona location "from approximately the middle of 2013 until June 2015." Top Line has confirmed that Mr. Diaz was employed by Top Line from November 29, 2011, through May 19, 2015, and, specifically, as a Restaurant Manager at Top Line's Casa Grande, Arizona location from April 25, 2013, through May 19, 2015. (Snyder Decl. at ¶ 2). Thus, Mr. Diaz's tenure as a Restaurant Manager and employee with Top Line concluded prior to the relevant statute of limitations under any circumstance, meaning that Mr. Diaz would not be part of any purported class in this matter. As such, his declaration should not be considered in support of the instant motion.

Indeed, Mr. Diaz would not be part of any class in the instant matter as his employment ended prior to the statute of limitations period applicable to his claims, as Arizona does not have its own wage and hour overtime laws and follows the FLSA.

**EVEN CONSIDERING PLAINTIFFS' SUPPLEMENTAL EVIDENCE, THEY STILL HAVE NOT MEET THEIR BURDEN TO WARRANT CONDITIONAL CERTIFICATION**

> [D]istrict courts have *discretion*, in appropriate cases, to implement 29 U.S.C. § 216(b), . . . by facilitating notice to potential plaintiffs.

*Hoffman-La Rouche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (emphasis added).

Initially, Top Line reiterates its position that the "modest plus" standard adopted by certain courts in this circuit should apply to Plaintiffs' motion here, as substantial discovery in this matter has occurred; namely, an entire phase of discovery aimed at issues surrounding conditional certification. While Plaintiffs have now submitted four (4) additional declarations from other Restaurant Managers, they still do not meet the "modest plus" standard to warrant conditional certification in any scope.

Notwithstanding the foregoing, Top Line submits that Plaintiffs' evidence, in its entirety, nonetheless, does not meet the "modest" standard to warrant conditional certification either. That said, to the extent that the Court, in its discretion, believes that conditional certification is warranted on any level, it should be limited to only those locations in which plaintiffs Frisbie and Russell and the three relevant declarants (Debra Ross, Peter Dietzman, and Christina Buckles).[2]

As the Court is aware, there are numerous assistant manager misclassification cases in the Second Circuit based on an alleged *de facto* unlawful policy (which is what Plaintiffs allege here), where conditional certification was denied outright or limited in scope. *See, e.g.*, *Amhaz v. Booking.com (USA), Inc.*, 17 Civ. 2120, 2018 WL 4279468, at *__ (S.D.N.Y. Aug. 23, 2018) (denying nationwide conditional certification and limiting scope to three locations out of eighteen in which the plaintiffs primarily worked and provided declarations and testimony regarding their experiences and observations at those particular locations); *Brown v. Barnes &*

---

[2] It bears mentioning that all of the additional declarants worked at Denny's locations that were sold by Top Line to the Feast defendants on September 16, 2015. As such, the window of time within which these individuals worked during the relevant limitations period, as Restaurant Managers for Top Line, is a matter of weeks if the three-year limitations period applies and the Court tolls the statute of limitations for the entire period of time since Plaintiffs' filed their initial motion for conditional certification on August 22, 2018. If the two-year limitations period applies or the Court discounts the tolling of the statute of limitations for the time period of February 7, 2019 (the date the initial motion was denied), through March 26, 2019 (the date Plaintiffs' renewed their motion), then these individuals would not even fall within the purported conditional class.

*Noble*, 1:16-cv-07333 (RA) (KHP), 2018 WL 3105068, at *18 (S.D.N.Y. June 25, 2018) (denying conditional certification in instances similar to those presented here); *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012); *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 800–01 (S.D.N.Y. 2012) ("*Guillen II*") (denying conditional certification, following *Guillen I*, *infra*, where the plaintiff submitted affidavits from six Assistant Store Managers in support of his renewed motion); *Khan v. Airport Management Services, LLC*, No. 10-CV-7735, 2011 WL 5597371, at *3–5 (S.D.N.Y. Nov. 16, 2011) (denying conditional certification where the plaintiff submitted four declarations in support of his request which alleged that "'Operations Managers' [at a nationwide chain of newsstands] performed primarily 'clerk activities' rather than managerial functions" and included specific references by name to other "similar employees" with whom the plaintiff spoke regarding overtime issues); *Vasquez v. Vitamin Shoppe Industries, Inc.*, No. 10 Civ. 8820, 2011 WL 2693712 (S.D.N.Y. July 11, 2011) (denying nationwide and statewide conditional certification where the plaintiff submitted a personal declaration identifying by name and store location six other Store Managers, which he observed and had conversations with, that performed primarily non-managerial tasks and worked in excess of forty hours per week); *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 478–80 (S.D.N.Y. 2010) ("*Guillen I*") (denying conditional certification where the plaintiff's evidence "consist[ed] of affidavits from five [Assistant Store Managers] who experienced the allegedly illegal activities at nine of the 820 Marshalls stores nationwide");

For instance, in *Amhaz v. Booking.com (USA), Inc.*, Magistrate Judge Pitman limited the scope of conditional certification sought by a purported collective class of misclassified account managers and key account managers working at Booking.com. Specifically, Magistrate Judge Pitman denied the plaintiffs' request for conditional certification across all nineteen (19) of

Booking.com's stateside office locations, but granted conditional certification as to the three office locations – New York, Las Vegas, and Los Angeles – in which the four (4) plaintiff-declarants primarily worked.  In reaching his decision, Magistrate Judge Pitman highlighted that the plaintiffs' declarations were insufficient to warrant conditional certification across all Booking.com offices, as they contained mere conclusory statements that all account managers and key account managers " 'across the United States have the same job duties' " without providing any details to support the same, such as specific conversations "in which an [account manager] or [key account manager] from another office described their actual day-to-day job responsibilities and explained why those responsibilities were primarily non-managerial tasks."  Accordingly, Magistrate Judge Pitman found that the plaintiffs' declarations contained "precisely the vague, conclusory, and unsupported assertions that are an insufficient basis for conditional certification because they are void of detail to show that employees in other positions were similarly situated."

By way of example, the declarations submitted from Nancy Amhaz, Raven Britt, Brett Hamilton, and Monica Hidalgo in support of the motion for conditional certification in *Booking.com* (all of which were substantially the same) contained the following assertions:

- "I observed that the Misclassified Managers worked hours that regularly exceeded forty (40) hours per week and were not compensated overtime wages, because they were all paid on a fixed salary basis."

- "Throughout my employment with Defendants, I spoke with other Misclassified Managers working for Defendants throughout the United States about work and pay at Booking.com on a regular basis because we would all meet at mandatory training seminars held throughout the United States and Defendants' annual meeting in Amsterdam."

- "I know that all Misclassified Managers were paid a fixed salary without just compensation and had the same job duties because I met many Misclassified Managers who were based at different Booking.com office locations throughout the United States during my employment at Booking.com.  Throughout my employment at least a few times each year, I had to attend various training seminars that would be

- required for all Misclassified Managers.  During such all-day training seminars, I would have an opportunity to speak with other Misclassified Managers, to compare compensation, working hours and job duties.  Based on my conversations, all Misclassified Managers had similar compensation, working hours and job duties."

- "There were many other employees with whom I spoke at these training seminars, but I do not recall their names.  But I do recall meeting with Misclassified Managers based in the following offices of Booking.com and everyone complaining about not receiving overtime compensation: Atlanta, Boston, Chicago, Dallas, Denver, Honolulu, Houston, Los Angeles (Key Account Managers only), Las Vegas, Miami, New York City, Orlando, Phoenix, San Francisco (Key Account Managers only), Seattle and Washington D.C."

- "I observed that employees of Defendants are interchangeable among the different offices.  Based on my personal observations and conversations with other employees, Defendants implemented the same wage and hour policies for all Misclassified Managers at all of Defendants' offices.  For example, Carter Hearne was transferred from San Francisco to Seattle to New York."

Copies of the declarations of Nancy Amhaz, Raven Britt, Brett Hamilton, and Monica Hidlago submitted in the *Booking.com* case are annexed hereto as **Exhibit "A."**

Despite references in the declarations to the names and locations of other workers with whom the declarants spoke regarding their pay and job duties, and references to specific locations in which declarants observed other workers subject to similar conditions, Magistrate Judge Pitman denied the plaintiffs' request for conditional certification of account managers and key account managers across all of Booking.com's stateside offices.

Here, the four (4) declarations submitted in supplemental support of Plaintiffs' renewed motion likewise do not warrant conditional certification of Restaurant Managers across all of Top Line's locations for the same reason – *i.e.* they contain "precisely the vague, conclusory, and unsupported assertions that are an insufficient basis for conditional certification because they are void of detail to show that employees in other positions were similarly situated."  Illustrative of this point are the following statements contained in the supplemental declarations submitted by Plaintiffs here:

### *Declaration of Peter Dietzman*

- "Based on my observations of RMs who worked alongside me or at other locations, all RMs performed the same or similar primary duties. I know this because I and other RMs had to complete uniform training programs and uniform manuals which taught us how to perform our duties to Top Line's standards."

(Dietzman Decl. at ¶ 20.)

- "I also had occasion to witness other RMs working at other locations, performing the same duties that I perfromed an [sic] RM. We also participated in conference calls, company events and regular meetings. During these calls, events and monthly meetings, I often heard other RMs discuss what they were doing in their restaurants and how busy they were. We also discussed what was expected of RMs in each restaurant."

(Dietzman Decl. at ¶ 21.)

- "Like me, other RMs that I knew regularly worked more than forty hours each workweek. I know this because, when hired, we were told we were expected to work at least 50 hours per week. I witnessed and regularly spoke and interacted with RMs and we discussed the work we were performing at our restaurants and the amount of hours we had put in to complete our job duties."

(Dietzman Decl. at ¶ 22.)

### *Declaration of Debra Ross*

- "Other RMs employed by Top Line also worked over 40 hours a week, were classified as exempt from overtime requirements, were not paid overtime compensation, and spent the vast majority of their time performing non-exempt, manual labor. I know this because I worked with other RMs, saw other RMs at work, and spoke with other RMs about the position. We discussed the long hours we worked, the physically demanding work we performed, and that we were not paid overtime."

(Ross Decl. at ¶ 4.)

- "In addition to the restaurant I worked in during my tenure as an RM for Top Line, I also filled in from time to time at several other area Top Line Denny's restaurants. But regardless of where I worked for Top Line, the RM job was the same. In each location, I spent the majority of my time performing manual labor, and in each location the manual labor and how it was performed was the same. I did not require or receive any new or additional training before working as an RM at different Top Line locations."

(Ross Decl. at ¶ 8.)

### *Declaration of Christina Buckles*

- "Other RMs employed by Top Line also worked over 40 hours a week, were classified as exempt from overtime requirements, were not paid overtime compensation, and spent the vast majority of their time performing non-exempt, manual labor. I know this because I worked with and trained with other RMs. Each restaurant operated by Top Line has multiple RMs on staff. We worked together, and we all performed the same work. We talked about the physical demands of the RM position. the long hours RMs worked, and that RMs were not paid overtime. We would comment we felt more like cooks than managers."

(Buckles Decl. at ¶ 6.)

- "All RMs are trained in the same manner and with the same materials. The training I received was identical to the training received by other RMs I knew and worked with. I know this because during my training, I saw other RMs also being trained at the same time. We were trained in the same way, according to the same training program, and using the same training materials. We also completed the same on-line training modules that were the same for all RMs."

(Buckles Decl. at ¶ 7.)

- "Although I was officially assigned to the same restaurant during my entire tenure as an RM for Top Line, I frequently "covered" RM shifts at other Top Line Denny's restaurants in the Phoenix area, as needed. During my time as an RM, I worked at four different Top Line Denny's restaurants. In each restaurant, the work I performed as an RM was exactly the same. Differences in restaurant location did not affect the work I performed, of the expectations placed upon me, as an RM."

(Buckles Decl. at ¶ 8.)

### *Declaration of Henry Diaz[3]*

- "Each Top Line restaurant I worked in had multiple RMs on staff. Each of the RMs employed by Top Line also worked over 40 hours a week, were classified as exempt from overtime requirements, were not paid overtime compensation, and spent the vast majority of their time performing non-exempt, manual labor. I know this because I worked with other RMs, saw other RMs at work, and spoke with other RMs about the position. We complained to each other about the long hours we worked and the tasks we performed."

(Diaz Decl. at ¶ 7.)

---

[3] As discussed in Section __, *supra*, the Declaration of Henry Diaz should not be considered by the Court in support of Plaintiffs' motion as Mr. Diaz's tenure as a Restaurant Manager and employee with Top Line concluded prior to any applicable limitations period under the FLSA.

- "In addition to the two restaurant I worked in during my tenure as an RM for Top Line, I also filled in from time to time at other area Top Line Denny's restaurants. Regardless of where I worked for Top Line, the RM job was the same. In each location, I spent the majority of my time performing manual labor, and in each location the manual labor and how it was performed was the same. I did not require or receive any new or additional training before working as an RM at different Top Line locations."

(Diaz Decl. at ¶ 9.)

Without more, a plain reading of the supplemental declarations illustrates that they do not contain the requisite specificity to warrant conditional certification across all of Top Line's Denny's franchise locations. Indeed, the declarations are devoid of information critical to Plaintiffs' request, including, but not limited to, the following:

(1) the names and locations worked of other RMs that declarants "worked with", "saw", and "spoke with" regarding the position; including specific details as to what exactly they observed and discussed with these other RMs, as it pertained to their day-to-day activities in the position and why those activities were primarily non-managerial, as well as dates, times, and duration of such observations and discussions; and

(2) the locations in which declarants "filled-in" or "covered" shifts as an RM at other locations, including the relevant dates and times of same;

The foregoing information was precisely the same type of information the plaintiffs in Booking.com failed to include in their declarations, which ultimately resulted in Magistrate Judge Pitman Report and Recommendation limiting the scope of conditional certification to only those locations in which the plaintiffs primarily worked. In fact, the declarations submitted by the plaintiffs in Booking.com actually contained more details than those submitted by Plaintiffs' here, as they identified additional purported class members, with whom declarants spoke regarding their experiences and pay at *Booking.com*, by name, position, and location. Beyond that, the plaintiffs in Booking.com sought conditional certification of misclassified managers across only nineteen (19) different offices as compared to the thirty-eight (38) different Top Line Denny's franchise locations across

which Plaintiffs' seek conditional certification here. As such, Magistrate Judge Pitman's Report and Recommendation in *Booking.com* is instructive with respect to the instant matter.

It also bears mentioning that Magistrate Judge Pitman issued the decision in *Ibea v. Rite Aid Corp.*, ; a decision on which Plaintiffs' have relied in support of their motion in both their moving papers and at oral argument. Nonetheless, Magistrate Judge Pitman in Booking.com, when presented with facts and circumstances substantially the same as presented here, did not warrant conditional certification across of the alleged misclassified managers across all Booking.com locations. Thus, highlighting all the more reason why conditional certification should be limited here and how Plaintiffs' have failed to recognize the distinguishing characteristics of the instant matter as compared to those cases on which they rely.

Moreover, while Plaintiffs' supplemental declarations support a larger geographic dispersion than that presented by the testimony of plaintiffs Frisbie and Russell alone, Plaintiffs' evidence nonetheless falls short of warranting conditional certification across all Top Line Denny's locations because it does not illustrate a common factual nexus linking Plaintiffs to all other potential class members as employees that performed non-managerial tasks. *See Brown*, 2018 WL 3105068, at *17 (recognizing that "the mere existence of a certain number of plaintiffs, covering a sufficiently widespread geographic area, should not be expected by itself to give rise to a legally sufficient basis to find that plaintiffs are similarly situated across the nation absent actual evidence[] of a link between plaintiffs and those across the nation" (internal quotation marks omitted) (internal citation omitted)).

**TOP LINE REQUESTS AN OPPORTUNITY TO SUBMIT COMPETING AFFIDAVITS OR OTHER EVIDENCE TO THE EXTENT THE COURT BELIEVES IT WOULD BE RELEVANT TO THE ANALYSIS AT THIS STAGE OF THE CERTIFICATION ANALYSIS**

Top Line recognizes that it is well-established in the Second Circuit that competing affidavits and credibility assessments are not favored and often not considered at the first stage of the certification inquiry. Accordingly, and also to avoid mudding the issues, Top Line has not submitted any competing affidavits or evidence attacking the credibility of the declarants in response to Plaintiffs' renewed motion. However, should the Court deem it appropriate to consider the same in this matter, Top Line would request an opportunity to submit competing affidavits or other evidence to the Court in advance of the oral argument scheduled for June 11, 2019.

## CONCLUSION

For the foregoing reasons, Top Line respectfully requests that the Court deny Plaintiffs' renewed motion for notice and conditional certification, or, alternatively, limit such conditional certification and notice as detailed above.